UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL C.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

CASE NO. 3:24-cv-05463-JHC

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION

# I
## INTRODUCTION

This matter comes before the Court on Plaintiff's Complaint Re: Review of Social Security Decision. Dkt. # 3. Plaintiff seeks review of the partial denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends that the Administrative Law Judge (ALJ) erred in determining his residual functional capacity and by improperly relying on a vocational expert's testimony. Dkt. # 8 at 2. As discussed below, the Court AFFIRMS the Commissioner's final decision.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 1

## II
### BACKGROUND

Plaintiff is in his early 60s, has a GED education, and has worked as a greeter, driver, laborer, parts picker, and cleaner. Administrative Record (AR) at 36, 338. Plaintiff was discharged from the Marine Corps because of complications with his right knee. Dkt. # 8 at 4; AR 33, 320.

On March 4, 2021, Plaintiff filed Title II and Title XVI applications for disability insurance benefits and supplemental security income. AR 27. Plaintiff suffers from "chronic obstructive pulmonary disease, osteoarthritis, bilateral knee degenerative joint disease, degenerative disc disease, depressive disorder, substance addiction, obesity, peripheral arterial disease, and anxiety disorder." AR 30.

On December 20, 2023, an ALJ issued a partially favorable decision for Plaintiff. AR 38. The ALJ concluded that Plaintiff was disabled under the Social Security Act beginning on May 12, 2018, in part because on that date, Plaintiff's "age category changed to an individual of advanced age." AR 36 (citing 20 C.F.R. §§ 404.1563, 416.963), 38. The ALJ concluded that Plaintiff was not disabled between Plaintiff's amended alleged onset date of disability of February 1, 2017, through May 12, 2018. AR 27, 38.

In determining that Plaintiff was not disabled between February 1, 2017, and May 12, 2018, the ALJ followed the five-step disability evaluation process. AR 28–29. At step four, the ALJ determined Plaintiff's residual functional capacity (a finding of what a claimant can do despite their physical, mental, or other limitations) and considered whether he could perform any past relevant work. *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1191 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520(a)(4)(iv)). The ALJ found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," subject to various

exceptions.  AR 32.  Because the ALJ found that Plaintiff could not perform any past relevant work, AR 36, the ALJ proceeded to step five, "where the burden shifts to the Commissioner to prove that the claimant can perform a significant number of jobs that exist in the national economy given the claimant's residual functional capacity, age, education, and work experience."  *Kilpatrick*, 35 F.4th at 1191.  The ALJ asked a vocational expert whether a hypothetical person with Plaintiff's residual functional capacity would be able to perform jobs in the national economy.  AR 37, 329–30.  The vocational expert responded that such a person could work as a Marker, Router, and Marker II.  AR 330.  The ALJ concluded that, based on the vocational expert's testimony, Plaintiff was not disabled prior to May 12, 2018, because he could find other work in the national economy.  AR 37.

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied his request for review on April 10, 2024.  AR 1–4.  Plaintiff appeals before this Court.[1]

### III
### DISCUSSION

"This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole."  *Reynoldson v. Comm'r of Soc. Sec.*, 649 F. Supp. 3d 1114, 1118 (W.D. Wash. 2023).  A factual finding is supported by substantial evidence if a reasonable person could interpret the evidence to support the finding.  *See id.*  The Court may not reverse an ALJ's decision when there is "harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Id.* at 1123–24 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

---

[1] Under 42 U.S.C. § 405(g), a claimant has 60 days from the Appeals Council's decision to file an appeal before this Court.  Plaintiff filed this case on June 11, 2024, just after the 60-day deadline.  But because the Commissioner does not raise this issue, the Court does not consider it.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 3

A.      Residual Functional Capacity

The ALJ properly determined Plaintiff's residual functional capacity.  An ALJ cannot rely on a vocational expert's testimony if it is based on a hypothetical that does not accurately reflect a claimant's limitations.  *See Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023).  Plaintiff says that the ALJ erred in determining his residual functional capacity by: (1) failing to properly credit Dr. Katrina Higgins's report about his mental limitations; and (2) failing to find that Plaintiff required an option to alternate between sitting and standing.  Dkt. # 8 at 2.

1.      Dr. Higgins's report

Any error in the ALJ's assessment of Dr. Higgins's report would be harmless because it does not concern the period at issue on this appeal.  Dr. Higgins's report says that Plaintiff's "perseverance seems to be somewhat low," that he "could likely handle low-stress work tasks in a work environment with few, if any changes in routine," and that he "may have a higher than average rate of absenteeism due to periods of low mood."  AR 1219.  Plaintiff says that the ALJ, who found Dr. Higgins's report only "partially persuasive," AR 35, should have more fully credited Dr. Higgins's opinions about Plaintiff's mental limitations.  Dkt. # 8 at 8–15.  The only part of the ALJ's residual functional capacity finding addressing Plaintiff's mental limitations was that he "can tolerate occasional interaction with coworkers and supervisors, but no direct interaction with the general public" and that he "can tolerate occasional changes to work routines and work processes." AR 32.

But even if the ALJ erred by discounting some of Dr. Higgins's opinions, her report does not reflect Plaintiff's condition between February 1, 2017, and May 12, 2018, the period at issue on this appeal.  Dr. Higgins based her findings on a functional assessment conducted on November 15, 2022.  AR 1214–19.  Although Dr. Higgins reviewed prior medical records, her report has a disclaimer that the patient history summarized may be "inaccurate" and is not

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 4

intended to be "a finding of fact." AR 1214. Plaintiff says that Dr. Higgins did not expressly limit her findings to a certain period but does not explain how an evaluation conducted in 2022 is probative of his condition in 2017. Dkt. # 11 at 2. Thus, any error in the ALJ's consideration of Dr. Higgins's report is harmless. *See, e.g.*, *Costa v. Astrue*, 743 F. Supp. 2d 1196, 1215 (D. Or. 2010) (error in disregarding a doctor's opinion was harmless because it "does not establish any cognitive impairment for any time period other than the time of evaluation").

Plaintiff appears to raise two contentions in a single paragraph of his reply brief. First, Plaintiff says, "If the ALJ was unclear on [whether Dr. Higgins's findings were limited to Plaintiff's condition in 2022], he was obliged to follow up with the consultative examiner in order to ensure the record was fully and fairly developed." Dkt. # 11 at 2. The only potentially applicable authority Plaintiff cites in support of this assertion is SSR 18-1p, which states, "If there is information in the claim(s) file that suggests that additional medical evidence relevant to the period at issue is available, [the agency] will assist with developing the record."[2] *Id.* at 3; *see Greif v. Kijakazi*, 2022 WL 280605, at *4–5 (E.D.N.Y. Jan. 31, 2022) ("Social Security Rulings lack the force of law," but can be persuasive authority). Second, Plaintiff relies on *Smith v. Kijakazi*, 14 F.4th 1108 (9th Cir. 2021), to suggest that the ALJ erred by failing to "adequately address [his] symptom progression over time, particularly during the initial stages of alleged disability." Dkt. # 11 at 3. Because Plaintiff did not make these arguments in his opening brief, the Court need not consider them. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). But even considering these contentions, the Court concludes that they lack merit.

---

[2] Plaintiff also cites 20 C.F.R. § 404.1519p(b), which provides, "If the report is inadequate or incomplete, we will contact the medical source." But Plaintiff does not specify that any medical report is "inadequate or incomplete."

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 5

a. ALJ's duty to develop the record

Plaintiff does not show that the ALJ had a duty to develop the record as to his mental limitations. "[A]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (quotation marks and citation omitted). Plaintiff does not show that the ALJ or a medical expert concluded that the record was ambiguous. *Cf. id.* at 1150–51 (the ALJ did not sufficiently develop the record because the ALJ heavily relied on a medical expert who testified that the record was ambiguous). Nor does he identify what records the ALJ should have requested or what questions the ALJ should have asked of a witness. Plaintiff does not assert that the ALJ should have requested the prior medical records that Dr. Higgins reviewed, and, in any event, these records appear to be included in the administrative record.[3] Because Plaintiff establishes neither ambiguity nor inadequacy in the record, the Court cannot conclude that the ALJ had a duty to develop it further. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).

b. Symptom progression over time

Plaintiff's contention that the ALJ did not adequately address the progression of his symptoms over time lacks specificity. Plaintiff cites *Smith*, in which the Ninth Circuit held that an ALJ erred because she discounted medical reports regarding a claimant's condition during an earlier part of the alleged disability period and instead relied on a medical report that she believed was more representative of the claimant's condition throughout the entire alleged disability period. 14 F.4th at 1116. It is unclear how Plaintiff relies on *Smith*. Plaintiff's

---

[3] In his opening brief, Plaintiff cites medical records from 2014 and 2019. Dkt. # 8 at 5 (citing AR 1120, 1185). Some of these records and others in the administrative record appear consistent with those summarized in Dr. Higgins's report. *Compare* AR 1214 *with* AR 1180–81 (July 31, 2014 record) *and* AR 1184–85 (July 30, 2014 record) *and* AR 1119–20 (May 10, 2019 record).

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 6

position might be the opposite of the claimant's position in *Smith*: that Dr. Higgins's report *is* representative of his mental limitations throughout the entire alleged disability period. But if so, *Smith* is not on point.

Alternatively, Plaintiff's position might be that, like in *Smith*, the ALJ disregarded earlier medical records about his mental limitations. But Plaintiff does not specifically raise this issue. Plaintiff's contentions that the ALJ erred by failing to adequately consider his ability to concentrate, need for a low-stress job, likelihood for absenteeism, and need for few changes in routine work tasks are all based on Dr. Higgins's report. *See* Dkt. # 8 at 2 (listing issues presented), 8–15. Plaintiff does not assert that the ALJ disregarded other medical records. Plaintiff cites medical records from 2014 and 2019 but does so in the context of contending that the ALJ should have more fully addressed "Dr. Higgins' opinions regarding [his] limitations in perseverance, absenteeism, and need for low-stress, routine work." *See id.* at 5 (citing AR 1120, 1185). The Court will not "manufacture arguments" for Plaintiff, who did not "specifically and distinctly argue this matter." *Greenwood v. F.A.A.*, 28 F.3d 971, 977–78 (9th Cir. 1994).

Thus, the Court concludes that the ALJ properly determined Plaintiff's mental residual functional capacity.

2.   Option to alternate between sitting and standing

The ALJ's finding that Plaintiff has the residual functional capacity to work without an option to alternate between sitting and standing (sit/stand option) is supported by substantial evidence. Plaintiff suggests that the ALJ should have included a sit/stand option in his residual functional capacity finding because he testified that in 2017, he could only stand "for about 10 minutes" before he "would need to be able to sit." Dkt. # 8 at 13 (citing AR 322); AR 321. But the ALJ considered Plaintiff's testimony before concluding based on medical reports that Plaintiff is "capable of sustaining light exertional work activities . . . despite her [*sic*]

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 7

impairments." AR 33–34. And Plaintiff does not address the Commissioner's observation that "the ALJ discounted [Plaintiff's] subjective allegations for several valid reasons that [he] has not challenged [in his opening brief]." Dkt. # 10 at 4. Plaintiff does not contend that the ALJ improperly relied on medical reports about the condition of his legs.

Plaintiff cites the general principle that in certain cases an ALJ may only reject a claimant's testimony about the severity of their symptoms with "specific, clear, and convincing reasons." Dkt. # 8 at 18 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015)). But this bare citation is not enough to assert that the ALJ did not sufficiently consider Plaintiff's testimony. The lack of organization in Plaintiff's brief shows that Plaintiff does not adequately raise such a claim. Plaintiff cites his testimony that he could only stand "for about 10 minutes" without context in the section of his opening brief titled "Failure to Include Limitations Regarding Absenteeism," which focuses on Dr. Higgins's report. *Id.* at 12–15. And Plaintiff cites *Brown-Hunter* in a different section of his opening brief titled "Harmful Errors," in which he focuses on the ALJ's failure to clearly define a sit/stand option while posing hypotheticals to the vocational expert (a contention that the Court rejects below in Section III.B). *Id.* at 18. Plaintiff does not properly challenge the ALJ's analysis of the condition of his legs. *See Tonya H. v. Comm'r of Soc. Sec.*, 2021 WL 5013877, at *6 (W.D. Wash. Oct. 28, 2021) (holding that the plaintiff waived any challenge to the ALJ's evaluation of his physical functioning).

Thus, the Court concludes that the ALJ properly found that Plaintiff's residual functional capacity did not require a sit/stand option.

B.      Vocational Expert Testimony

Because Plaintiff's residual functional capacity to work without a sit/stand option is supported by the record, his contentions that the ALJ posed incomplete hypotheticals including a sit/stand option to the vocational expert are meritless. The ALJ first asked the vocational expert

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 8

to consider Plaintiff's residual functional capacity—which did not include a sit/stand option—and determine whether a hypothetical person with such limitations could perform jobs in the national economy. AR 329–30. In response, the vocational expert listed the availability of three jobs: Marker II with 26,289 jobs, Router with 34,924 jobs, and Marker with 129,388 jobs. AR 330. Without additional prompting from the ALJ, the vocational expert added, "These jobs, your Honor, can be performed sitting or standing, and if I put that into the hypothetical, because of it being light work and the light work requiring being on their feet six hours, I would reduce the numbers by 50 percent." *Id.* When Plaintiff's attorney asked why the availability of the three jobs "would be reduced by 50 percent because of the sit/stand option," the vocational expert responded that she relied on her experience of reviewing over 100 Marker jobs and about 10 Router jobs. AR 333. Although the sit/stand option was not included in the residual functional capacity that the ALJ posed in his hypothetical to the vocational expert, the ALJ mistakenly stated in his decision:

> The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as:
>
> - [Marker] with approximately 26,289 jobs within the national economy *reduced by 50 percent*.
> - [Router] with approximately 34,924 jobs within the national economy *reduced by 50 percent*.
> - [Marker II] with approximately 129,388 jobs within the national economy *reduced by 50 percent*.

AR 37 (emphasis added). The Commissioner acknowledged that the addition of "reduced by 50 percent" after each set of job numbers was error.[4] Dkt. # 10 at 4 n.1.

---

[4] The ALJ also swapped the job numbers for Marker with those for Marker II. *Compare* AR 330 *with* AR 37. But because neither party raises this discrepancy, the Court does not consider it.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 9

Plaintiff says that the vocational expert's testimony is unreliable because the sit/stand option was not clearly defined (e.g., the frequency of alternating between sitting and standing),[5] and because the expert based the 50 percent reduction on her personal experiences. Dkt. # 8 at 7–8, 16–18. But even assuming these errors, they would be harmless because, as discussed above in Section III.A.2, Plaintiff has not shown that a sit/stand option should have been included in the ALJ's residual functional capacity finding in the first place. The ALJ was not required to consider a second hypothetical about a sit/stand option not included in his residual functional capacity finding. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).

Plaintiff also says that the ALJ "provided the numbers for jobs requiring a sit-stand option, without articulating that sit-stand option." Dkt. # 11 at 3. But based on the vocational expert's testimony, the ALJ provided numbers for jobs based on a residual functional capacity that does not include a sit/stand option. AR 329–30. For example, "129,388 jobs" represents the number of Marker II jobs in the national economy based on a residual functional capacity that does not include a sit/stand option, and the reader of the decision must apply the 50 percent reduction themselves to determine the number of Marker II jobs based on a residual functional capacity that includes a sit/stand option. AR 37.

It might be that the ALJ misunderstood the vocational expert's testimony and applied the 50 percent reduction in determining the number of available jobs in the national economy. But even if the ALJ based his decision on a 50 percent reduction of the job numbers he listed, the total would still be about 95,300 jobs. Plaintiff does not explain why this error would be

---

[5] There is a distinction between a "sit/stand option" and a "sit/stand alternative." *Lyman M. v. Comm'r of Soc. Sec.*, 2021 WL 1611341, at *2 (W.D. Wash. Apr. 26, 2021). A "sit/stand option" means that a claimant needs to "be able to alternate positions at will and work in either position," while a "sit/stand alternative" means that a claimant "alternat[es] between sitting and standing at distinct intervals." *Id.* It is unclear which of the two Plaintiff refers to because he says "sit-stand option" but also says that the ALJ should have specified the "frequency of position changes." Dkt. # 8 at 7–8. At the hearing, the vocational expert clarified that she meant the need for Plaintiff to "sit/stand at will." AR 334.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION - 10

harmful. An estimated figure of 95,300 jobs is within the number of jobs that courts have concluded is significant. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014) (collecting cases).

Thus, the Court concludes that the ALJ properly relied on the vocational expert's testimony in concluding that Plaintiff could find work despite his limitations.

## IV
## CONCLUSION

For these reasons, the Court AFFIRMS the Commissioner's final decision, and this case is DISMISSED with prejudice.

Dated this 21st day of January, 2025.

*John H. Chun*

John H. Chun
United States District Judge